```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                        :
CHUANDONG HAN,                                          :
                                                        :
                                                        :
                              Petitioner,               :
                                                        :        25-CV-10753 (VSB)
              - against -                               :
                                                        :        OPINION & ORDER
                                                        :
                                                        :
KRISTI NOEM, in her official capacity as                :
Secretary, U.S. Department of Homeland                  :
Security; JUDITH ALMODOVAR, in her                      :
official capacity as Acting Field Office Director       :
of the New York Immigration and Customs                 :
Enforcement Office; and PAMELA BONDI, in                :
her official capacity as Attorney General, U.S.         :
Department of Justice,                                  :
                                                        :
                              Respondents.              :
                                                        :
-----------------------------------------------------------X
```

Appearances:

David Aidan Bredin
Law Office of David A. Bredin
Flushing, NY

Colleen Kerwick
The Law Office of Colleen Kerwick
New York, NY
*Counsel for Petitioner*

Danielle Marryshow
U.S. Attorney's Office, Department of Justice, SDNY
New York, NY
*Counsel for Respondents*

VERNON S. BRODERICK, United States District Judge:

    This case joins a growing number of cases in this District and across the country in which

Immigration and Customs Enforcement ("ICE") argues—contrary to decades of its own

interpretation and application—that immigrants who are living in this country, pending removal proceedings, are now all subject to a mandatory detention provision.  ICE's policy change and its implementation has resulted in dozens of cases filed in this District alone and over 350 cases filed across the country in the last several months.  Chuandong Han ("Petitioner" or "Han"), the immigrant petitioner in this case, is one of the latest in the flood of immigrants seeking relief from detention under ICE's new policy.

On December 29, 2025, when Han reported for a routine immigration check-in, ICE arrested and detained him at 26 Federal Plaza, New York, NY ("26 Federal Plaza").  (Doc. 1. ("Pet.") at 4.)  Before me is Petitioner's Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition") challenging the lawfulness of his detention and seeking an order directing Respondents to immediately release Petitioner from custody.  (*See generally* Pet.)  For the reasons articulated below, the Petition is GRANTED, and I order Respondents (or the "Government") to immediately release Han from custody at Brooklyn Metropolitan Detention Center ("MDC"), where he is currently being held.

**I.     Factual Background**

**A.     *Petitioner's Entry Into the United States***

On approximately May 16, 2024, Han, a 40-year-old citizen of the People's Republic of China ("China"), entered the United States unlawfully by crossing the border at or near San Ysidro, California from Mexico.  (Doc. 9-1 ("Record of Deportable/Inadmissible Alien") at 1–2; *see also* Doc. 9 ("Opp'n Letter") at 1.)  Han has no known criminal history.  (Pet. 5; Record of Deportable/Inadmissible Alien 3.)

On May 16, 2024, the Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear ("NTA"), placing him in removal proceedings pursuant to the Immigration

and Nationality Act ("INA") § 212(a)(6)(A)(i), which states that a person is inadmissible if they are "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (Doc. 9-2 ("NTA") at 1.) The NTA specifically classified Han as an immigrant "present in the United States who has not been admitted or paroled," not as an "an arriving [noncitizen]." (*Id.* at 1.) According to the NTA, Han was scheduled to appear before an immigration judge on October 29, 2024, at 26 Federal Plaza. (*Id.*) He was also released on his own recognizance that same day, May 16, 2024, under INA § 236, codified by 8 U.S.C. § 1226. (Doc. 9-3 ("May 2024 Release Order").) The May 2024 Release Order directed that Han report for any hearing or interview as required by DHS or the Executive Office for Immigration Review ("EOIR") and advised Han that he could not change his place of residence without first securing written permission from the immigration officer listed on the form. (*Id.*)

On June 10, 2024, Petitioner filed his defensive Form I-589, Application for Asylum and for Withholding of Removal, on the grounds that he faces religious persecution as a Christian in China. (Pet. 4; Doc. 13 at 1; Doc. 22 ("Tr.") at 5:9-20; Doc. 17-1 at 2–3.) Han's asylum application remains pending, with a merits hearing currently scheduled for April 9, 2026. (Doc. 21 at 2.) Petitioner has complied with the conditions of his release since his May 16, 2024 release, and he has attended every mandatory scheduled check-in with ICE. (Doc. 13 at 1.) Moreover, Han has resided in Flushing, Queens continuously since his release with his sister and parents. (Doc. 8 ("Petitioner's letter") at 1; Doc. 11 ("Reply") at 4.)

### B.  *Petitioner's Arrest by ICE*

On December 29, 2025, Han reported for a routine check-in at 26 Federal Plaza. (Record of Deportable/Inadmissible Alien 2.) At the check-in, ICE arrested him. (*Id.*) Han was served

3

with an arrest warrant citing INA § 236—codified as 8 U.S.C. § 1226—as its basis.[1] (Doc. 9-4 ("Arrest Warrant").) The arrest warrant notes that the determination that Han was removable was based upon "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate . . . that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." (*Id.*) Han was not provided with advanced notice that he was going to be arrested. (*See* Tr. 11:20-25.) ICE also cancelled Han's May 2024 Order of Release on Recognizance, and he was moved to the Delaney Hall Detention Facility, in Newark, New Jersey. (Opp'n Letter 2.) Han was later transferred to Brooklyn MDC, (Doc. 19-2), where he is currently being detained without a bond hearing or any initial individualized custody determination, (Doc. 21 at 1).

## II.  Procedural History

On December 29, 2025 at 7:03 P.M. Eastern Standard Time, Han's counsel filed a petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (*See* Pet.) On December 30, 2025, I issued an order to show cause, directing the parties to attend an initial telephonic conference on January 2, 2026 to discuss venue and the relevant detention provisions. (Doc. 4.) On January 2, 2026, after I held the telephonic conference, I issued an order giving the parties until January 6, 2026 to address "the impact of this District's many cases that have applied Section 1226(a), which authorizes detention solely on discretionary, not mandatory, grounds for noncitizens who 'earlier entered and are [currently] present in the United States.'" (Doc. 7 at 2 (quoting *Yao v. Almodovar*, No. 25-CV-9982, 2025 WL 3653433, at *4 (S.D.N.Y. Dec. 17, 2025)).)

---

[1] The December 29, 2025 arrest warrant specifically directs Petitioner's arrest by "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [INA] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Doc. 9-4.)

4

In response, Petitioner filed a letter on January 5, 2026 arguing that because he has been continuously present in the United States since May 2024, the other cases in this District that rule in favor of the petitioners should control, and he is not subject to mandatory detention under 8 U.S.C. § 1225, only discretionary detention under 8 U.S.C. 1226(a). (Petitioner's Letter 1.) On January 6, 2026, Respondents filed their letter, conceding that "the parties agree that this case is materially indistinguishable from the other cases addressing ICE's detention authority for noncitizens, like Petitioner, who are physically present in the United States at the time of their detention." (Opp'n Letter 1.) However, Respondents contend that I should still deny Han's Petition, incorporating the arguments in their opposition brief filed in *Chen v. Almodovar*, No. 25-CV-9670, an allegedly similar case that was in front of Judge John P. Cronan. (*Id.* at 2.) In support of their opposition brief, Respondents attached various documents, including the Record of Deportable/Inadmissible Alien, (Doc. 9-1), the May 16, 2024 NTA issued to Petitioner, (Doc. 9-2), the May 16, 2024 Order of Release on Recognizance under INA § 236, codified by 8 U.S.C. § 1226, (Doc. 9-3), the December 29, 2025 warrant for Petitioner's arrest, (Doc. 9-4), and their opposition brief in *Chen v. Almodovar*, No. 25-CV-9670, (Doc. 9-5 ("Opp'n")).

On January 8, 2026, Petitioner filed his reply. (*See* Reply.) On January 14, 2026, the parties appeared at a hearing before me for oral argument on the habeas petition and related briefings. On January 15, 2026, I issued an order requesting additional information from Petitioner and Respondents regarding a possible credible fear interview and Han's defensive asylum applications, among other points. (Doc. 16.) In response to that order, Petitioner filed a declaration on January 22, 2026, (Docs. 17, 17-1), and Respondents filed a declaration on January 23, 2026, (Doc. 18-1). On February 4, 2026, Petitioner filed a status update letter regarding his master calendar hearing with the EOIR. (*See* Doc 21.) In the letter, Han's counsel

stated that the Immigration Judge "refused to conduct a bond hearing." (Doc 21 at 1.) Han's merits hearing for his asylum claim presentation is scheduled for April 9, 2026. (*Id.*)

### III. Legal Standard

Han brings his Petition pursuant to 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-04189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

### IV. Discussion

Han's Petition raises three questions that have already been addressed in more than two dozen cases in this District: (1) whether a person living in the United States after entering the country unlawfully is detained under 8 U.S.C. § 1225(b)(2)(A) or under 8 U.S.C. § 1226(a); (2) if § 1226(a) is the relevant detention provision, whether ICE's detention of a petitioner, undertaken without any individualized consideration, violates petitioner's due process rights; and (3) if there are due process violations, whether the appropriate remedy is a bond hearing or immediate release. I agree with the well-reasoned decisions of my many colleagues in this District, and, consistent with those decisions, find that Han is detained under 8 U.S.C. § 1226(a), not the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A) as Respondents argue. Further, since Han is detained under § 1226(a), his continued detention without any individualized process violates his due process rights, and he must be immediately released from detention.

### A. *Basis of Han's Detention*

Sections 1225 and 1226—the two statutes at issue in this case—are the primary provisions of the United States Code that govern the detention of noncitizens prior to an order of removal. Section 1226 "generally governs the process of arresting and detaining [non-citizens present in the country] pending their removal." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). Under Section 1226, "an [immigrant] may be arrested and detained pending a decision on whether the [immigrant] is to be removed from the United States." 8 U.S.C. § 1226(a). Detention is therefore discretionary, and the noncitizen may be released upon application on either bond or "conditional parole." 8 U.S.C. § 1226(a)(2)(B). "Critically, under 8 C.F.R. § 1236.1(d)(1), a noncitizen detained under § 1226 may appeal an initial custody determination, including the setting of bond, to an immigration judge." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025) (internal quotation marks omitted).

On the other hand, § 1225 provides that "in the case of an [immigrant] who is an applicant for admission, if the examining immigration officer determines that an [immigrant] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [immigrant] shall be detained." 8 U.S.C. § 1225(b)(2)(A). Outside of limited circumstances, which includes the paroling of a noncitizen for urgent humanitarian reasons or significant public benefit, detention under § 1225(b)(2)(A) is considered mandatory and immigrants are not entitled to a bond hearing. *Lopez Benitez*, 795 F. Supp. 3d at 484.

"The distinction [between these two provisions] has great significance because detention under Section 1225(b)(2)(A) is, with rare exceptions not relevant here, mandatory." *Cardenas v. Almodovar*, No. 25-CV-9169, 2025 WL 3215573, at *1 (S.D.N.Y. Nov. 18, 2025); s*ee also Tumba v. Francis*, No. 25-CV-8110, 2025 WL 3079014, at *2 (S.D.N.Y. Nov. 4, 2025). "By

contrast, '[d]etention pending adjudication of removal under Section 1226 is discretionary and affords noncitizens detained thereunder the right to an initial determination as to eligibility for release and the opportunity for a bond hearing upon detention.'" *Cardenas*, 2025 WL 3215573, at *1 (quoting *Tumba*, 2025 WL 3079014, at *2 (alteration in original)).

"Under the administrations of five presidents—including this one in 2016-2020—section 1225 applied to noncitizens at or near the border or those who were still seeking admission under the legal fiction of parole; section 1226, on the other hand, applied to those noncitizens found in the United States without legal status and therefore subject to removal." *Alvarez Ortiz v. Freden*, No. 25-CV-960, 2025 WL 3085032, at *10 (W.D.N.Y. Nov. 4, 2025). However, on July 8, 2025, ICE's policy shifted radically. *See Barco Mercado v. Francis*, No. 25-CV-6582, 2025 WL 3295903, at *2 (S.D.N.Y. Nov. 26, 2025). "[T]he acting director of ICE instructed ICE agents that [§ 1225(b)] not [§ 1226(a)], is the applicable immigration detention authority for all applicants for admission." *Id.* (internal quotation marks omitted).

Since Respondents' change in position, a growing number of courts across the country have confronted the statutory question of whether § 1225 also mandates the detention of noncitizens who are physically present and already living in the United States. In response to this question, an overwhelming majority of opinions in this District and others across the country have held that § 1226, not § 1225, governs the process of arresting and detaining noncitizens who are already present in the United States. *See, e.g.*, *Lopez Benitez*, 795 F. Supp. 3d at 484–491; *J.G.O. v. Francis*, No. 25-CV-7233, 2025 WL 3040142, at *2–4 (S.D.N.Y. Oct. 28, 2025); *Tumba*, 2025 WL 3079014, at *2–6; *Romero v. Francis*, No. 25-CV-8112, 2025 WL 3110459, at *2–3 (S.D.N.Y. Nov. 6, 2025); *Cuy Comes v. DeLeon*, No. 25-CV-9283, 2025 WL 3206491, at *2–4 (S.D.N.Y. Nov. 14, 2025); *Cardenas*, 2025 WL 3215573, at *1–2; *Villegas v. Francis*, No.

8

25-CV-09199, 2025 WL 3215597, at *2–4  (S.D.N.Y. Nov. 18, 2025); *Sun v. Almodovar*, No. 25-CV-9262, 2025 WL 3241268, at *2 (S.D.N.Y. Nov. 20, 2025); *Barco Mercado*, 2025 WL 3295903, at *4–9; *Rivera Esperanza v. Francis*, No. 25-CV-8727, 2025 WL 3513983, at *4–6 (S.D.N.Y. Dec. 8, 2025); *Campbell v. Almodovar*, No. 25-CV-09509, 2025 WL 3538351, at *6–10 (S.D.N.Y. Dec. 10, 2025), *opinion clarified*, 2025 WL 3626099 (S.D.N.Y. Dec. 15, 2025); *Yao*, 2025 WL 3653433, at *4–10; *Martinez v. Joyce*, No. 25-CV-10376, 2026 WL 62019, at *2 (S.D.N.Y. Jan. 8, 2026).  I have also previously determined as such in the context of a petition brought under § 1225(b)(1).  *See Sidqui v. Almodovar*, No. 25-CV-9349, 2026 WL 251929, at *12 (S.D.N.Y. Jan. 30, 2026) ("§ 1225(b) applies to an assessment of individuals at the United States' borders and ports of entry for individuals seeking admission into the country, *i.e.*, presenting at arrival, not those already in the country pending the outcome of removal proceedings, which are instead governed by § 1226(a)." (internal quotation marks omitted)).  "[M]ore than 160 federal district judges in some 50 districts across the country have addressed these questions in more than 350 cases presenting like facts," and "more than 350 decisions . . . have now rejected ICE's reading."  *Yao*, 2025 WL 3653433, at *3, *8.[2]

---

[2] Since ICE's policy change approximately seven months ago, hundreds of courts have struck down the Government's attempts to mandatorily detain immigrants who are already present in the United States.  As Judge Ho articulated, "treating attendance in immigration court as a game of detention roulette is not consistent with the constitutional guarantee of due process."  *Lopez Benitez*, 795 F. Supp. 3d at 499.  Yet Respondents daily continue detaining noncitizens at routine check-ins and immigration court hearings without any process, in direct contravention of the overwhelming majority position across the nation.  In doing so, ICE appears to seek to intimidate the millions of immigrants residing in the U.S. who have been attending their scheduled check-ins while litigating their pending immigration cases to encourage these noncitizens to voluntarily depart the country.  Indeed, some immigrants held under the mandatory detention provision are voluntarily departing the country even when the basis of their detention is potentially unlawful.  *See Avila Duchi v. Francis*, No. 25-CV-8162, 2026 WL 63717, at *1–2 (S.D.N.Y. Jan. 8, 2026) (finding that even though Petitioner was detained under 1226(a), so the Government "[bore] the burden of showing, by clear and convincing evidence, that [Petitioner] is a danger to the community or a risk of flight," the habeas petition was moot because Petitioner "requested voluntary departure"); *Bonilla v. Noem*, No. 25-CV-62395, 2025 WL 3496193, at *1 (S.D. Fla. Dec. 5, 2025) (21-year old petitioner present in the United States for over 6 years with an asylum application arguing that "given his mandatory detention . . . he was left with no other option but to seek Voluntary Departure and be separated from his family in the United States." (internal quotation marks omitted)).  In fact, Petitioner in this case "was informed of the option to Incentivized Voluntary Departure," after he was unlawfully detained.  (Record of Deportable/Inadmissible Alien 3.)  He declined the offer.  (*Id.*)  Moreover, while Han and others filing habeas petitions may have their day in court, only 55% of detained

The Government asserts that Han falls within the ambit of § 1225(b)(2)(A)'s mandatory detention requirement because he is "an applicant for admission" and he is "present in the United States without being admitted or paroled." (Opp'n 9 (internal quotation marks omitted).) Additionally, because Petitioner "cannot demonstrate he is 'clearly and beyond a doubt entitled to be admitted,'" Respondents argue that Han is mandatorily detained under § 1225(b)(2)(A). (*Id.* at 9 (quoting 8 U.S.C. § 1225(b)(2)(A).) Petitioner maintains he is not "seeking admission" because he has been living in New York since May 2024 after he fled persecution, he has an active asylum application, and Respondents cannot "retroactively recharacterize his detention as mandatory border detention under § 1225." (Reply 4.)

I "need not spill much ink on the issue, as [I] agree[] with the overwhelming weight of authority" and conclude that Han is detained under 8 U.S.C. § 1226(a). *Cardenas*, 2025 WL 3215573, at *2. As Judge Arun Subramanian and others in this District have explained, not every citizen who is an "applicant for admission" is "seeking admission." *J.G.O.*, 2025 WL 3040142, at *3; *Tumba*, 2025 WL 3079014, at *3. In addressing this issue, the Seventh Circuit explained that Defendants were "not likely to succeed on their argument" for mandatory detention, because an "applicant for admission" is notably a noncitizen "present in the United States," which is not the same as a noncitizen "seeking admission." *Castañon-Nava*, 161 F.4th at 1060–63 (7th Cir. 2025). In other words, an applicant specifically "seeking admission" under the INA "requires [a noncitizen] to c*ontinue* to want to *go into* the country." *J.G.O.*, 2025 WL

---

immigrants in the Northeast—the region with some of the highest representation rates—even have counsel for their immigration cases. *See Where Can You Win in Immigration Court?*, American Immigration Counsel, (Nov. 20, 2025), https://perma.cc/7ZLW-BLHQ. Without representation, thousands of detained noncitizens face additional hurdles in challenging ICE's violations of their due process rights, even though the Government actively continues to ignore that "[t]he distinction between an [immigrant] who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061–62 (7th Cir. 2025) (internal quotation marks omitted) (collecting cases). Respondents' attempts to continue detaining individuals under the same problematic statutory interpretation despite hundreds of judges holding otherwise is an unequivocal rejection of statutory and constitutional mandates.

3040142, at *3 (emphasis in original). This is not the case with Han, because "[he] can't go into a place where [he] already [is]." *Id.* Any alternative interpretation would be inconsistent with the statutory scheme, contemporaneous regulations, and the purpose of recent amendments. *See Goorakani v. Lyons*, No. 25-CV-9456, 2025 WL 3632896, at *8–12 (S.D.N.Y. Dec. 15, 2025). To assume otherwise would mean that millions of immigrants living in the United States should be mandatorily detained as if they are on the cusp of our nation's borders. *See Tumba*, 2025 WL 3079014, at *5 ("Our immigration laws have long made a distinction between those [noncitizens] who come to our shores seeking admission . . . and those who are within the United States after entry, irrespective of its legality." (internal quotation marks omitted and alteration adopted)).

Moreover, Respondents' own exhibits demonstrate that as recently as December 29, 2025, ICE understood Han's detention to be governed by § 1226 not § 1225(b)(2)(A). On May 16, 2024, when ICE released him on his recognizance, the agency document cited INA § 236, codified as 8 U.S.C. § 1226. (May 2024 Release Order.) More than 1.5 years later, when ICE arrested Han, it also cited § 1226 as the sole basis for his detention. (*See* Arrest Warrant (directing Han's arrest by "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [INA]").) It is only during this litigation that the Government now claims that Han is detained under § 1225(b)(2)(A). In fact, just as they have done in other cases in this District, the Government simply attaches Form I-200, the arrest warrant under § 1226, without any further explanation—despite the fact that this arrest warrant cites to and therefore unambiguously establishes that the Petitioner was detained pursuant to ICE's discretionary authority under § 1226. *See Yao*, 2025 WL 3653433, at *3 ("ICE attached to its opposition papers the December 2 arrest warrant stating that Yao had been detained under § 1226, without acknowledging that such contradicts its litigation position."); *Lopez Benitez*, 795 F. Supp. 3d at 485 ("Respondents' own

exhibits unequivocally establish that [the petitioner] was detained pursuant to Respondents' discretionary authority under § 1226(a).  The warrants for [the petitioner's] respective arrests in 2023 and 2025 explicitly authorized those arrests pursuant to 'section 236 of the Immigration and Nationality Act'—i.e., § 1226."); *Sun*, 2025 WL 3241268, at *2 ("The Court concludes that [the petitioner] is not subject to the mandatory detention provision of section 1225(b)(2)(A).  The record demonstrates that . . . he was detained pursuant to a warrant expressly invoking section 1226.").

Indeed, Respondents do not even attempt to distinguish the facts of this case before me from the underlying facts of other similar cases in this District.  In *Ipina Hernandez v. Genalo*, another habeas petition in front of me in which the petitioner—who has been present in this country for over a decade—is also purportedly detained under § 1225(b)(2)(A), the Government even goes so far as to "acknowledge[] that [my] holdings in *Sidqui* . . . would control the result." *Ipina Hernandez v. Genalo*, No. 26-CV-137 (Doc. 20 at 2).  Instead, Respondents rely on a handful of decisions that rule in favor of the Government's current position and ask me to split with the authority of over 20 cases in this district and the hundreds of cases across the country that have ruled that § 1226 governs the detention of a petitioner that is living in the United States.  (Opp'n 13 (citing *Chen v. Almodovar*, No. 25-CV-8350, 2025 WL 3484855 (S.D.N.Y. Dec. 4, 2025) ("*Chen I*"); *Candido v. Bondi*, No. 25-CV-867, 2025 WL 3484932 (W.D.N.Y. Dec. 4, 2025); *Sandoval v. Acuna*, No. 25-CV-1467, 2025 WL 3048926, at *5 (W.D. La. Oct. 31, 2025); *Rojas v. Olson*, No. 25-CV-1437, 2025 WL 3033967, at *7 (E.D. Wis. Oct. 30, 2025); *Mejia Olalde v. Noem*, No. 25-CV-168, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025); *Vargas Lopez v. Trump*, No. 25-CV-526, 2025 WL 2780351, at *9 (D. Neb. Sept. 30, 2025); *Alonzo v. Noem*, No. 25-CV-1519, 2025 WL 3208284, at *2–5 (E.D. Cal. Nov. 17, 2025); *Altamirano*

*Ramos v. Lyons*, No. 25-CV-9785, 2025 WL 3199872, at *8 (C.D. Cal. Nov. 12, 2025); *Chavez v. Noem*, 801 F. Supp. 3d 1133, 1140–41 (S.D. Cal. 2025).)

In addition to *Chen I*, which Respondents cite in their opposition, I am also aware of three other recent decisions in this District that have favored the Government's interpretation of § 1225(b)(2), including Judge John P. Cronan's opinion in *Chen v. Almodovar*, No. 25-CV-9670, 2026 WL 100761 (S.D.N.Y. Jan. 14, 2026) ("*Chen II*"). *See also Weng v. Genalo*, No. 25-CV-09595, 2026 WL 194248 (S.D.N.Y. Jan. 25, 2026); *Arana v. Arteta*, No. 26-CV-240, 2026 WL 279786 (S.D.N.Y. Feb. 3, 2026). None of these decisions are binding on me, nor do I find their interpretations persuasive. In *Chen II*, Judge Cronan explains that the titles of § 1225 and 1225(b)(2), which only refer to the "Inspection of immigration officers" and the "Inspection of other aliens," "stand in contrast to the title of Section 1225(b)(1), which refers to 'Inspection of aliens arriving in the United States' . . . [and] *does* apply expressly to arriving [noncitizens]." *Chen*, 2026 WL 100761, at *11 (emphasis in original) (quoting 8 U.S.C. § 1225(b)(1)(A)(i)). However, this ignores the fact that the term "inspection" on its own—without a clarification about arriving noncitizens—is inextricably connected to entry near or at the border. *See J.G.O.*, 2025 WL 3040142, at *4 ("Section 1225(b)(2) is suggestively titled '*Inspection* of other aliens,' referring to a process that occurs when somebody arrives in this country." (emphasis in original) (quoting 8 U.S.C. § 1225(b)(2))).

Indeed, ICE's sister agencies acknowledge this interpretation. A U.S. Customs and Border Protection ("CBP") webpage, titled "Immigration Inspection Program," states that individuals "*seeking entry into the United States* are inspected at Ports of Entry (POEs) by CBP officers who determine their admissibility." U.S. Customs and Border Protection, *Immigration Inspection Program*, https://perma.cc/AEA7-JUVC (last visited Jan. 30, 2026) (emphasis added).

13

Moreover, on the U.S. Citizenship and Immigration Services webpage, "inspection" is defined as the "formal process of determining whether an [immigrant] may lawfully enter the United States" and one that "must occur prior to an [immigrant's] landing in or entering the United States." U.S. Citizenship and Immigration Services, Chapter 2 - Eligibility Requirements, https://perma.cc/3T2U-FFWG (last visited Jan. 30, 2026). Indeed, § 1225 references the word "inspection" ten separate times. *See, e.g.*, 8 U.S.C. § 1225(a), (b), (d). On the other hand, the word "inspection" does not even appear once in § 1226(a). It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989).

Additionally, as many of my colleagues in this District have emphasized, it would be remiss of me to ignore decades of immigration law that has acknowledged the difference between those at the border and those in the interior of the country. *See, e.g.*, *Lopez Benitez*, 795 F. Supp. 3d at 490–91. In asking me to apply 1225(b)(2)(A) to immigrants like Han, Respondents ask me to follow a "problematic" statutory interpretation, *Yao*, 2025 WL 3653433, at *8, and determine that millions of people who are residing in the United States with pending immigration proceedings are subject to mandatory detention without any due process. Thus, I find that Han is detained under the discretionary provision of § 1226(a).

### B. *Due Process*

"[T]he Fifth Amendment entitles noncitizens to due process of law . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993) and *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). "It is well established that such protection extends to noncitizens,

including those who are in removal proceedings." *Lopez Benitez*, 795 F. Supp. 3d at 492. Section 1226(a) requires that the Government make an individualized determination based on (1) whether the noncitizen is a "danger to property or persons" and (2) whether the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). Therefore, although ICE has some discretion in determining whether to detain a noncitizen under § 1226(a), due process "still requires that such discretion actually be exercised—i.e., that some determination actually be made." *Tumba*, 2025 WL 3079014, at *7.

Here, "there is nothing to suggest that DHS exercised any discretion *at all* in detaining" Petitioner. *Lopez Benitez*, 795 F. Supp. 3d at 494 (emphasis in original). ICE was required to make an individualized determination before detaining Han under § 1226(a), but there is no evidence that they did so. In their opposition, Respondents only argue that they have followed the due process requirements under § 1225(b), not that they provided Petitioner with any process. (Opp'n 15–20.) Moreover, Respondents' exhibits demonstrate that under § 1226(a), Han likely has substantial arguments that he would not be a danger or flight risk. Han does not have a criminal history, (Record of Deportable/Inadmissible Alien 3), he has not violated his conditions of release, and he has a pending asylum application based on a fear of religious persecution in China, (Tr. 11:9-12; Doc. 17-1 at 2–3). However, Han was not able to make these arguments because ICE effectuated his detention without any opportunity to be heard or an individualized assessment of his circumstances. "These procedural protections matter," and "[t]hey are not mere technicalities." *Yao*, 2025 WL 3653433, at *11. Consistent with the vast majority of other courts to consider these circumstances, I find that ICE violated Petitioner's due process rights.

    **C.** ***Administrative Exhaustion and Remedy***

15

Finally, Respondents urge that the proper remedy is a bond hearing before an immigration judge if Petitioner is found to be detained under Section 1226(a). (Opp'n 20–23.) However, "[t]here is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention." *Rivera Esperanza*, 2025 WL 3513983, at *8 (quoting *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014)). A court may excuse a failure to exhaust when, among other reasons, "irreparable injury may occur without immediate judicial relief," or "in certain instances a plaintiff has raised a substantial constitutional question." *Id.* (quoting *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003), *as amended* (July 24, 2003)).

As articulated by many courts in this District, "a bond hearing [cannot] retrospectively cure the due process violation, which derived from [Petitioner's] unlawful arrest and detention without the statutorily required exercise of discretion." *Yao*, 2025 WL 3653433, at *11 (citing *Tumba*, 2025 WL 3079014, at *7–9); *see also, e.g.*, *Cardenas*, 2025 WL 3215573, at *3 (To accept that only a bond hearing is the proper remedy is "to ignore the gravamen of Petitioner's claim, which is that the Government violated her due process rights by detaining her without exercising any discretion in the first instance."). In other words, the harm began when Petitioner was detained without process and continues with each day he remains in custody. Thus, Respondents must release Han from detention.

### V.    Conclusion

Therefore, the Petition for a writ of habeas corpus is GRANTED. Respondents are hereby ORDERED to immediately release Han from custody and certify compliance with this order by filing an entry on the docket no later than 5:00 p.m. on February 9, 2026.

IT IS FURTHER ORDERED that Petitioner shall not be re-detained without a proper individualized custody determination that his detention is authorized under 8 U.S.C. § 1226(a) and "notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the Government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a)." *Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511, at *17 (E.D.N.Y. Oct. 6, 2025). *Cf. Rueda Torres v. Francis*, No. 25-CV-8408, 2025 WL 3168759, at *6 (S.D.N.Y. Nov. 13, 2025).

IT IS FURTHER ORDERED that the Government is ENJOINED from denying bond to Petitioner in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a controlling change in law. If Petitioner is granted bond, the Government is ENJOINED from invoking the automatic stay provision at 8 C.F.R. § 1003.19(i)(2), *Rueda Torres*, 2025 WL 3168759, at *6, absent a controlling change in law.

Respondents did not address Petitioner's request for attorney's fees and costs pursuant to the Equal Access to Justice Act as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412 in their Opposition. Thus, if Petitioner still intends on seeking such relief, the parties shall propose a briefing schedule within 7 days.

SO ORDERED.

Dated:   February 6, 2026
         New York, New York

*[signature: Vernon Broderick]*
Vernon S. Broderick
United States District Judge